Irvin W. BURTON and Kenneth G. Hale, Appellants (Defendants below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 73S00–8612–CR–01038.

Supreme Court of Indiana.

Aug. 15, 1988.

Jerry J. Lux, Robison, Deprez, Lux & Schooley, P.A., Shelbyville, for appellants.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Irvin W. Burton and Kenneth G. Hale were found guilty by a jury of count I, Burglary, a class B felony, and count II, Theft. They were also found to be habitual offenders. Each was sentenced to a term of ten (10) years for the burglary conviction, enhanced by thirty (30) years for the habitual offender finding, and further sentenced to two (2) years for the theft conviction, the sentences to be served concurrently. Burton and Hale directly appeal raising the following issues for our review:

1. adequacy of the jury instructions given at the habitual offender phase of trial;
2. whether Burton's conduct and the fact that the State referred to such conduct during final argument denied Hale a fair trial since Hale and Burton were jointly represented by counsel;
3. sufficiency of the evidence to sustain Hale's convictions;
4. sufficiency of the identification evidence to sustain the finding of habitual offender as to Burton.

The facts most favorable to the verdict below show that on the evening of February 4, 1986, Gary Larkey, and his wife and child, returned to their home in Shelby County, Indiana. As they approached their home they noticed the lights were on and a strange car was in the driveway near the back sidewalk with the engine running. Mr. Larkey was approaching the back door when a man ran out of the house and jumped the fence, dropping something as he jumped. Larkey later found that the item dropped was his wife's jewelry box. Mr. Larkey then shut off the car and took the keys, then, went inside the house, armed himself, and called the police.

Mr. Larkey later looked at the house and noticed the back door had been kicked in and that various articles had been moved from their positions inside the house and several articles were missing. Among the missing articles were money in a blue bank bag and jewelry.

Several police officers arrived on the scene and a search for fleeing suspects began, which included the use of canine units. Hale was found hitchhiking along a nearby interstate. Burton was detained when he tried to obtain a ride from the New Palestine Town Marshall. Both men had wet, muddy clothes when found. The police also made various photographs of shoeprints found at the scene of the burglary and where the dogs had tracked and found the bank bag. Comparison of some of these prints matched the shoes of Hale and Burton.

I

Both Burton and Hale challenge the jury instructions given at the habitual offender phase of trial. They claim the trial court erred by failing to instruct the jury they must find the prior unrelated felonies in the proper sequence. Burton also asserts the jury lacked adequate instruction and received insufficient evidence on the issue of identity to make its finding that he was a habitual offender.

Burton and Hale assert they were denied due process because the trial court failed to instruct the jury that they were required to find two prior unrelated felony convictions with commission sequential to conviction in order to find them guilty of the habitual offender count. This allegation of error is waived by both defendant's failure to object to the trial court's instructions. *Baker v. State* (1987), Ind., 505 N.E. 2d 49, 51; *Didio v. State* (1984), Ind., 471 N.E.2d 1117, 1123. Also, their failure to tender any written instructions to cure the omission in the trial court's instructions constitutes a waiver of the issue. *Lamotte v. State* (1986), Ind., 495 N.E.2d 729, 732; *Didio*, 471 N.E.2d at 1123. While it is the duty of the trial court to properly instruct the jury on all matters of law which are necessary for their information in giving their verdict pursuant to Ind. Code

§ 35–37–2–2, a defendant may not stand idly by while the court makes an error in instructing the jury and then claim, on appeal, that because of this error he is entitled to a new trial. *Muse v. State* (1981), Ind., 419 N.E.2d 1302, 1305.

Burton and Hale argue that an instruction containing an incorrect statement of the statutory law prejudicial to the defendant is fundamental error not waived by failure to tender instructions or to object specifically thereto. However, here the evidence presented to the jury on Hale's prior convictions shows that one of the crimes was committed on December 31, 1978, for which he was convicted on July 20, 1979, and sentenced on August 7, 1979. The other exhibit shows that crime was committed on December 28, 1980, which is subsequent to the conviction and sentence for the other felony. Regarding Burton, the evidence presented shows that one of the crimes was committed on April 21, 1978, for which he was convicted on April 17, 1979, and sentenced on May 7, 1979. Another exhibit shows that crime was committed on June 29, 1984, for which he was convicted and sentenced on July 3, 1985. Thus, the exhibits show the prior unrelated felonies of both defendants are in the required sequence. An error in the instruction of the jury does not require reversal if the conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Cheney v. State* (1985), Ind., 486 N.E.2d 508, 513. Since the evidence clearly shows the proper sequence of conviction and sentence on the first prior felony before commission of the second prior felony, the jury could not have found that the sequence was other than proper for either defendant. Burton and Hale fail to demonstrate prejudice and thus present no reversible error on this issue.

■ Burton also asserts the jury lacked adequate instruction on the issue of identity to make its finding that he was a habitual offender. He claims no instruction was provided requiring the jury to find that the defendant Burton, just convicted of the principal charge, is the same person convicted on each of the prior unrelated felonies. However, the instructions given by the trial court sufficiently covered this issue. The court's final instruction No. 1 informed the jury that the information alleged that defendants were habitual offenders by charging "that the defendants have accumulated two (2) prior unrelated felony convictions each...." That instruction, in pertinent part, also informed the jury:

> The State has the burden to prove to each juror beyond a reasonable doubt that the defendants have accumulated two (2) prior unrelated felony convictions each.

The court's instruction No. 2 informed the jury that to find Burton to be a habitual offender the State must have proved:

> The defendant, Irvin W. Burton
>
> 1. On July 3, 1985, was convicted of the crime of theft for which he was sentenced on July 3, 1985.
>
> 2. On April 17, 1979, was convicted of the crime of battery with a deadly weapon for which he was sentenced on May 7, 1979.
>
> and each of such criminal convictions were felony convictions.

Thus, the charge as a whole properly informed the jury on the identity issue. *See Lucas v. State* (1986), Ind., 499 N.E.2d 1090, 1098; *Moore v. State* (1985), Ind., 485 N.E.2d 62, 66; *Wallace v. State* (1985), Ind., 474 N.E.2d 1006, 1008.

## II

Hale claims the conduct of Burton during trial and during the sentencing hearing created a substantial probability of prejudice against him. He asserts Burton's conduct and the fact that the State referred to such conduct during final argument denied him a fair trial since he and Burton were jointly represented by a single appointed attorney.

■ However, Hale did not move for a separate trial nor did he ever object to being tried with Burton. Thus, the issue is waived for failure to move for a separate trial. *See Beal v. State* (1983), Ind., 453 N.E.2d 190, 194; *Dorton v. State* (1981), Ind., 419 N.E.2d 1289, 1296. Furthermore, if this issue had not been waived, Hale

would have to establish that failure to sever his case denied him a fair trial. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298, 1302. In order to determine if actual prejudice occurred due to the joint trial, it is necessary to examine what actually happened at trial. *Blacknell v. State* (1987), Ind., 502 N.E.2d 899, 905; *Broadus*, 487 N.E.2d at 1302. Hale's claim that he was prejudiced by disruptive behavior by Burton is not supported by the record. Hale does not state what it is that Burton did or said during trial to allegedly prejudice Hale. Hale cites the prosecutor's reference to Burton in his closing argument. An examination of the prosecutor's argument does not reveal that Burton engaged in any behavior prejudicial to Hale. While Burton presented his own argument during the habitual offender proceeding, his argument was only on his own behalf and cannot be said to have caused actual prejudice to Hale. Hale has not presented evidence of Burton's behavior that shows actual prejudice to his case. Thus, Hale has failed to establish he was denied a fair trial.

■ Hale also claims his trial counsel was ineffective due to a conflict of interest in his joint representation of Hale and Burton. However, Hale has shown neither a conflict of interest, nor actual prejudice. Hale asserts that a conflict of interest developed due to Burton's behavior at trial and that the joint representation prevented counsel from objecting to or rectifying Burton's behavior. However, as previously noted, Hale has not provided any evidence of Burton's alleged misbehavior at trial. Thus, Hale has not shown that an actual conflict of interest existed. Also Burton's argument during the habitual offender proceeding does not evidence a conflict of interest because it did not implicate Hale and thus did not reflect adversely on Hale. Therefore, counsel's failure to object to Burton's alleged behavior does not evidence ineffective representation due to a conflict of interest.

### III

Hale argues the evidence is insufficient to sustain his convictions. Hale claims the State failed to prove his guilt because the State merely provided circumstantial evidence of opportunity by introducing his extrajudicial admission of presence at the scene of the crime and his explanation of his presence, but the State introduced no substantial evidence contradicting such explanation. He claims the record shows that direct evidence as to commission was available to the State but withheld from the jury.

[6] As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1240.

■ Convictions for burglary and theft may be sustained on circumstantial evidence. *Jones v. State* (1985), Ind., 485 N.E.2d 627, 628; *Abercrombie*, 478 N.E.2d at 1240. Moreover, the circumstantial evidence need not exclude every reasonable hypothesis of innocence. All that is necessary is that an inference may be drawn which supports the jury's findings. *Evans v. State* (1986), Ind., 495 N.E.2d 739, 740; *Voss v. State* (1984), Ind.App., 469 N.E.2d 788, 790.

■ Hale argues he and Burton were not the burglars. However, the evidence is clear that Hale and Burton were both present at the crime scene and that both men fled when the homeowner returned. Flight from the scene may be considered as circumstantial evidence of a consciousness of guilt. *Jones*, 485 N.E.2d at 628; *Abercrombie*, 478 N.E.2d at 1240; *Hartlerode v. State* (1984), Ind., 470 N.E.2d 716, 719.

After a police search for the fleeing suspects Hale was found hitchhiking along a nearby interstate and Burton was detained when he tried to obtain a ride from the town marshall. Both men had wet, muddy clothes when found. When Hale was found he claimed that he had been riding

with a friend in a green station wagon, that his friend had let him out to urinate, and his friend had then driven away. Burton gave a false name and said he had been beaten, robbed and thrown out of a car.

Both Hale and Burton later took polygraph examinations. Both men gave totally different stories to the polygraph examiner from the conflicting stories they had originally given the police concerning their presence in the area. Both men told the polygraph examiner they had had car trouble, pulled into the Larkey residence for help, and scared away some burglars, but then fled themselves when Mr. Larkey returned due to their own prior criminal records. The polygraph indicated deception by both men, including their denial of any intent to steal and not going far into the house. Hale's claim of car trouble was not substantiated by the evidence, which indicated the vehicle was not in serious trouble.

Other evidence at trial showed that the car in the Larkeys' driveway was titled to Burton. The license plate on it that night belonged to a van registered to Hale. Shoeprints found at the crime scene and in the area where the bank bag was found matched those of Hale and Burton. Hale's shoeprints matched the shoeprints followed by one of the canine units from the Larkey residence. When arrested, Burton had money in his possession similar to that which had been in the bank bag. Both Burton and Hale would have had time to reach the location where they were discovered after the burglars were surprised by the return of the Larkeys. Also, police officers did not see any other persons on foot that night in the area of the crime.

The evidence presented at trial establishes more than mere presence at the scene. The evidence shows that both men drove to this remote location to commit a burglary, were caught in the act, and fled with some of the loot, but lost the jewelry box and bank bag along the way. Both were caught nearby and gave the police incredible stories concerning their presence in the area. Sufficient evidence of probative value was presented to sustain Hale's convictions for burglary and theft.

## IV

Burton asserts the jury received insufficient evidence on the issue of identity to make its finding that he was a habitual offender. He specifically challenges State's exhibit 74, asserting that while the exhibit was introduced to establish a prior conviction for theft, the exhibit lacked sufficient identification of him.

 Burton has waived this alleged error because his argument is predicated on grounds substantially different from those presented at trial. Burton claims here that the exhibit is irrelevant and immaterial. At trial, however, his objection was:

Your Honor, defendants would object to State's Exhibit number 74 in that for reasons unknown to me, it is different than all the others and has no certification page attached.

This objection is not based on a claim that the exhibit is irrelevant and immaterial. A defendant cannot add to or change his objections in the reviewing court. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872; *Sills v. State* (1984), Ind., 463 N.E.2d 228, 234. Any ground not raised at trial is not available on appeal. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 910. As Burton's argument on appeal is substantially different from the objection raised at trial, the issue is waived.

Moreover, had the issue not been waived, it would nonetheless fail. Burton claims that State's exhibit 74 is irrelevant and immaterial because it lacks sufficient identification of him. Specifically, Burton complains the arrest report in exhibit 74 is not connected to the judgment in the exhibit because the judgment order is for cause of action number A84–373, which does not appear on the arrest report. The arrest report shows four charges of theft with cause numbers A684–520, B684–520, C684–520 and D684–520. The judgment order shows that William E. Burton entered a guilty plea to one count of theft and that the three other counts, numbers B684–520, C684–520, D684–520, were dismissed. The arrest date on the arrest report of September 14, 1984 matched the date when the

four count information was filed. The arrest report showed an alias for this William Erwin Burton of Irvin W. Burton. The court's minutes, for September 17, 1984, gave the defendant's date of birth as March 28, 1949, the same as on the arrest report. This also matches the date of birth Burton gave when arrested for the case at bar. Burton's description on arrest in the case at bar is similar to that in the arrest report included in exhibit 74. Further, Detective Michael Herndon compared the fingerprint in the arrest report included in Exhibit 74 with Burton's fingerprints from the case at bar and testified that the thumb print on Exhibit 74 matched Appellant Burton's thumb print. Thus, the arrest report is sufficiently connected to the judgment.

Burton also claims the arrest report included in exhibit 74 is not part of the court record in A84–373 because its certification is by the Indianapolis Police Department and not by the Clerk of the Courts. This court has held that while certified copies of documents containing the same name or a name similar to a defendant's may be introduced to prove commission of prior felonies, there must be other supporting evidence to identify the defendant as being the same person named in the documents. *Pointer v. State* (1986), Ind., 499 N.E.2d 1087, 1089. Here, the arrest report supports the identification of Burton in the Judgment of Conviction in the cause of action A84–373.

Additionally, it was for the jury to weigh the evidence, the exhibit and the other connecting evidence, to determine whether the exhibit identified Burton as the man convicted and sentenced for the prior crime, and circumstantial evidence may be sufficient to establish identification. *See Pointer*, 499 N.E.2d at 1089. State's exhibit 74 is relevant and material as it tends to prove Burton was the person charged, convicted, and sentenced for theft.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.